## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### Sherman Division

| | |
|---|---|
| **TIFFANY V. WASHINGTON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 4:22-cv-514 |
| v. ) | |
| ) | |
| **RAYTHEON TECHNOLOGIES** ) | |
| **CORPORATION** ) | **VERIFIED COMPLAINT** |
| ) | |
| ) | **JURY DEMANDED** |
| Defendant. ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Tiffany Washington (hereinafter "Plaintiff"), by and through undersigned counsel, Tully Rinckey, PLLC, and hereby states the following complaint against Defendant, Raytheon Technologies (hereinafter "Defendant"), for the cause of action stated as follows:

### I.   NATURE OF THE CASE

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. for relief from discrimination and hostile work environment based on race and retaliation.

1

## II.     THE PARTIES

2. Plaintiff is domiciled in Frisco, Tx, Collin County, which is a county in this District.

3. Defendant is Raytheon Technologies.

4. Plaintiff was employed by Raytheon Technologies as an Information System Security Manager.

5. Defendant is a corporation headquartered in Waltham, MA 02451. Defendant carries on regular business in Texas and has offices in McKinney, TX, Collin County, which is a county in this District.

## III.     JURISDICTION AND VENUE

6. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 42 U.S.C §§ 2000e-5, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et. seq*.

7. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

8. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, an entity that operates within the state of Texas, and which actions occurred within this judicial district. 28 U.S.C. § 1391.

9. Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## IV.     EXHAUSTION OF REMEDIES

10. Plaintiff filed an EEOC charge of discrimination against Defendant on February 24, 2022. *See* Exhibit 1, EEOC Charge.

11. On March 24, 2022, the EEOC issued a determination to not proceed further with the investigation and made no findings on the merit. This determination also provided Plaintiff with her Notice of Right to Sue in Federal Court within ninety (90) days of receipt of the notice. *See* Exhibit 2, Notice of Right to File.

12. Plaintiff timely files this action within ninety ("90") days of receipt the Notice of Right to Sue. This complaint is therefore proper and timely.

## V.   FACTS

13. Plaintiff began working for Defendant in 2010 as an Information System Security Officer in their El Segundo, CA location. Plaintiff left Defendant's employ in November 2015, but returned April 2018 as an Information Security System Manager ("ISSM") at the El Segundo, CA location. In September 2019, Plaintiff transferred to handling federal contract work at Defendant's McKinney, TX office.

14. Plaintiff is African American.

15. In or about November 2020, Air Force Office of Special Investigations ("AFOSI") Special Projects (PJ) Det 8's Program Security Representative Jack Baker ("PSR Baker") and Security Control Assessor Dickson Donahue ("SCA Donahue") questioned Plaintiff how Defendant was handling Assured File Transfers and managing Data Transfer Agent privileges.

16. On or about November 2020, Plaintiff and her manager, ISSM Mike Jackson ("ISSM Jackson"), explained to PSR Baker and SCA Donahue that Defendant's currently approved procedures were outdated and no longer compliant with current AFOSI's policy requirements, but Defendant had sent updated procedures to the Air Force for approval.

17. On or about November 2020, PSR Baker and SCA Donahue instructed Plaintiff and ISSM Jackson to immediately stop all High-to-Low data transfers and remove all users' Data Transfer Agent privileges until those users had been re-trained on the updated process once they were approved.

18. Defendant immediately informed their stakeholders of PSR Baker's and SCA Donahue's directions.

19. Defendant's Cyber department took actions to enact PSR Baker's and SCA Donahue's directions within a few weeks of the PSR Baker's and SCA Donahue's instructions to immediately stop all High-to-Low data transfers and remove all users' Data Transfer Agent privileges until those users had been re-trained on the updated process once they were approved.

20. Subsequent to the Cyber department enacting PSR Baker's and SCA Donahue's directions, Defendant's Director, Travon Devers ("Director Devers") reprimanded Plaintiff for adhering to AFOSI's instructions to stop all High-to-Low data transfers and remove all users' Data Transfer Agent privileges, despite Director Devers' knowledge of such directives.

21. After the Cyber department removed users' access in accordance with AFOSI's directives, Plaintiff discovered that Director Devers and Natalie Elsaw, Defendant's Associate Director for Special Programs, were abusing privileges by re-authorizing users' privileges despite AFOSI's orders. Defendant ordered Plaintiff to step-down on her enforcement of AFOSI's directions.

22. In or around December 2020, Plaintiff informed SCA Donahue that Defendant had thwarted AFOSI's orders and violated the Joint Special Program Implementation Guide ("JSIG") requirement of Defendant's contractual obligations.

23. In or around February 2021, Defendant restructured the North Texas Cyber Organization. Defendant instructed Plaintiff not to notify AFOSI of the restructuring as they customarily would.

24. Defendant informed Plaintiff that Plaintiff should remain the signature authority on cyber documentation although she would no longer be responsible for the programs she had been supporting prior to the restructuring.

25. The restructuring of the North Texas Cyber Organization resulted in a temporary demotion for Plaintiff from ISSM to a "Super ISSO" position that had no management authority.

26. From March 2021 through July 2021, Defendant falsely provided Plaintiff's name as the responsible party for Air Force programs she no longer managed to intentionally have her charged with security infractions and violations.

27. In or about June 2021, Defendant removed Plaintiff's managerial duties and Garrick Kazen, Cyber Manager ("Manager Kazen"), informed Plaintiff that she was no longer permitted to contact the AFOSI directly.

28. In addition, in or around June 2021, local ISSM approval privileges were removed from African American managers, namely Plaintiff, ISSM Jackson, and Barette Mort, Regional Cyber Manager.

29. Jeff Garry, Cyber Manager ("Manager Garry"), informed Plaintiff that AFOSI said they did not trust the African American managers.

30. In July 2021, Defendant listed job openings for the African American managers' positions, including Plaintiff.

31. Plaintiff's position as an ISSM was filled by a white male.

32. On August 10, 2021, Defendant's CPSO Manager John Meehan ("CPSO Manager Meehan") and Manager Kazen provided Plaintiff a Special Access Program Suspension Memorandum from all Air Force programs which noted multiple security violations. CPSO Meehan and Manager Kazen refused to explain what violations the memorandum referred to but requested Plaintiff sign the memorandum.

33. Plaintiff was not provided any information regarding the alleged violations noted in the Special Access Program Suspension Memorandum, in accordance with the AFOSI-approved *Raytheon Incident Escalation Plan*.

34. Plaintiff was denied information regarding her personnel record in the Defense Information System for Security to access the information regarding the alleged security violations. Instead, the only person permitted to access Plaintiff's personnel record was Don Morris, Defendant's Director ("Director Morris"). Multiple employees of Defendant's informed Plaintiff that she would have to contact AFOSI to obtain the information that formed the basis of the Special Access Program Suspension Memorandum.

35. On August 11, 2021, Manager Kazen contacted Plaintiff to have her sign the suspension memorandum. Defendant's Director, Tom Gallagher ("Director Gallagher") threatened to remove Plaintiff's Top Secret Clearance if she did not sign the memorandum. Plaintiff signed, but noted that she did not agree with the allegations and she had not received any notification of the violations otherwise.

36. On August 12, 2021, Plaintiff met with Tom Palmer, AFOSI Det 8 Special Agent-In-Charge ("SAIC Palmer") to ask about the violations but SAIC Palmer told Plaintiff she should be asking Defendant's leadership as they issued the violations and recommended Plaintiff's Special Access Program access be removed. Plaintiff was informed that her Air Force access had been permanently removed. When Plaintiff pressed for details, she was told generally that she was found responsible for violations although she had not committed them, she was not the manager for the programs at the time the violations occurred, she did not approve the actions, and she was not aware that the actions were planned or in progress.

37. Defendant was aware of Plaintiff's non-involvement as they had removed her in the February 2021 restructuring. Plaintiff had repeatedly informed Defendant and AFOSI that she was no longer in the managerial position to affect the violations she was later charged with. After the August 12, 2021 discussion with AFOSI, Plaintiff informed Defendant's Human Resources department of the false allegations. After this report, Human Resources instructed personnel in Cyber and Security not to speak to Plaintiff.

38. The individuals who were responsible for the security violations were not issued Special Access Program suspensions. These individuals were Raul Fernandez, Christopher Gibbs, and Adalberto Sanchez, Evan Szapiro, Raytheon IT Manager, Sally Hogle, 42 CPSO Manager, John Meehan, DNET (Det 8) CPSO Manager, and Alex Tripp, 42 ISSO. Other than Christopher Gibbs, who held no managerial authority, each of the individuals listed was outside of Plaintiff's protected classes.

39. After Plaintiff informed Human Resources of the false allegations, Manager Kazen notified Plaintiff that she was being demoted to a position in the Department of Defense Collateral

to support the eWAN Project. Manager Kazen and Manager Garry announced this demotion as a promotion.

40. On or about August 19, 2021, Plaintiff filed an Ethics complaint. After Plaintiff filed an ethics complaint, Plaintiff was stripped of her ISSM responsibilities and was no longer permitted to support non-Air Force Special Access Programs of departments such as the Army, Navy, and DARPA, although she was still accessed and had received no suspension from those agencies. Plaintiff was then given work more in-line with tasks assigned to a seasonal intern such as performing internet research, updating spreadsheets, and updating documents with Defendant's new logo.

41. On August 31, 2021, Plaintiff appealed the Special Access Program suspension as set forth in the August 10, 2021, memorandum via an unclassified email to Associate Director Elsaw, Director Devers, and Manager Kazen. Associate Director Elsaw and Manager Kazen said they would review to ensure that it was safe to submit the document through unclassified channels.

42. On or about September 2, 2021, Manager Kazen incorrectly informed Plaintiff that there was sensitive information contained within the appeal documentation and it could not be sent via unclassified channels. This documentation, containing personally identifiable information, was improperly shared with an entire room of people beyond those Plaintiff identified as approved to view the document.

43. Subsequently, on September 2, 2021, Associate Director Elsaw informed Plaintiff that, as they had determined her appeal paperwork was classified but Plaintiff had sent it via unclassified emails, they had to confiscate her work laptop and phone. No other actions were taken in accordance with data spill cleanup procedures to address this issue. Plaintiff

explained to Defendant that there was no sensitive information contained within her appeal documentation. Once Plaintiff's assets were confiscated, Associate Director Elsaw informed Plaintiff that there was nothing classified about her appeal, but she had been instructed to say that in order to get her assets.

44. Further, on September 2, 2021, PSR Baker from AFOSI refused to sign a Document Transmittal Receipt, which is mandatory to complete when couriering classified material, as he was aware that the appeal did not contain classified information.

45. Between September 3 and September 22, 2021, because of Defendant's actions in confiscating Plaintiff's work laptop and phone, Plaintiff had to use forty-two and a half hours of paid time off due to her inability to work without these devices.

46. On or about September 15, 2021, Associate Director Elsaw informed Plaintiff that the classification of her appeal documentation had been raised to an even higher classification and she was being issued a security violation for her appeal documentation. The violation documentation Associate Director Elsaw provided contained false information, relied on inapplicable security policies, and violated what was contained within contractual agreements.

47. On or about September 21, 2021, Paul Garcia, Cybersecurity Director and Plaintiff's new supervisor ("Director Garcia"), informed Plaintiff that he was not aware of whether Plaintiff would remain a manager due to the security issues and the fact that she had reported to Human Resources and Ethics. Director Garcia informed Plaintiff that her direct reports were being removed from her direction as she had been on approved leave. Director Garcia told Plaintiff that he had heard some of the goings-on from others and was not

interested in hearing Plaintiff's side of things. Director Garcia further instructed Plaintiff to stop providing false information although Plaintiff had not provided any falsehoods.

48. Subsequently, Manager Garry assigned Plaintiff's seat to the white male who was hired to fill the job openings *supra* and forced Plaintiff to work in the conference rooms.

49. On or about October 4, 2021, Director Garcia sent an email to the entire department regarding the removal of the African American managers from their positions, noting their direct reports would be reassigned, and providing Plaintiff's new position as "Process Improvement" with the Solutions Team.

50. On or about October 19, 2021, Plaintiff was instructed to update various Cyber Technical documents which were classified documents that were stored on unclassified servers. As Plaintiff had already informed Defendant of this security concern, she refused to work on the assigned projects. Plaintiff was then provided a new assignment that she had the same concerns about.

51. On or about November 17, 2021, Defendant did not provide Plaintiff with the bonus provided to the remainder of her team after she had filed another Ethics complaint.

52. On or about December 6, 2021, Plaintiff was informed that the classification of her appeal package had been changed back to unclassified, the security violation issued for her appeal would be expunged, and "things would now be moving along with [her] appeal." To date, Plaintiff has not received any indication that the security violation was expunged.

53. On or about March 18, 2022, Plaintiff was informed that her appeal documentation was received in December 2021, well after the deadline of September 10, 2021, necessitating

that her appeal documentation did not get forwarded when Plaintiff had been told it had in September 2021.

54. On or about May 16, 2022, Plaintiff was forced to resign as, after going on medical leave for six months due to the anxiety, severe depression, and physical symptoms that developed as a result of these events, because Defendant refused to return Plaintiff to her management position and return her access to secured systems, but instead offered a demotion to a position in a collateral environment.

## VI. CAUSES OF ACTION
## COUNT ONE

**(Discrimination on the Basis of Race in Violation of Title VII, 42 U.S.C. § 2000e, *et seq*)**

55. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

56. As a person of African-American descent, Plaintiff is a member of a protected class.

57. Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including removal of her Air Force SAP access, fraudulent allegations of Plaintiff's engaging in security violations, removal of her supervisory authority and resulting forced resignation.

58. The Defendant's improper adverse actions materially affected the terms, privileges and conditions of Plaintiff s employment as it impacted her Air Force SAP access, resulted in fraudulent security violations being held against her, removal of her duties, reassignment, and ultimately forced Plaintiff to resign from her position.

59. Defendant knew that Plaintiff is African-American prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected to because of her race.

60. Other employees who were similarly situated, but members of a different class than Plaintiff, were treated more favorably than Plaintiff in the terms and conditions of employment.

61. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

62. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

63. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her race.

64. Defendant discriminated against Plaintiff because of her race by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

65. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies

66. Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

67. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

68. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

69. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

## COUNT TWO

**(Discrimination on the Basis of Reprisal in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq* and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq. .)**

70. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff engaged in protected activity when she opposed the repeated security violations and complained of discrimination and abuse of power in August 2021.

72. Because of her protected activity, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including removal of her Air Force SAP access, fraudulent allegations of Plaintiff's engaging in security violations, removal of her supervisory authority and resulting forced resignation.

73. Defendant knew of Plaintiff's protected activities as Plaintiff had reported many of the violations she discovered to Defendant, by and through its employees and agents.

74. Plaintiff's protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

75. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

76. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of her protected activity.

77. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her participation and opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

78. Defendant discriminated against Plaintiff because of her protected activity by engaging in, tolerating or failing to prevent engagement in infractions and security violations.

79. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including, but not limited to, past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, and costs, - and is entitled to all available legal and equitable remedies.

80. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing throughout the period stated in this complaint.

81. Plaintiff has incurred lost wages, loss of reputation, and loss of career opportunities now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## COUNT THREE
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, et. seq and the Rehabilitation Act of 1973, as amended, 29 U.S.C.701 et. seq. .)

82. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

83. As a result of Plaintiff's protected status, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

84. Plaintiff was regularly and continually subjected to harassing conduct that alleged throughout this Complaint, which created a hostile and abusive work environment.

85. Plaintiff believes that she was subjected to a hostile work environment based on her race and reprisal.

86. Defendant's unlawful conduct was unwelcome.

87. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint, including the removal of her Air Force SAP access, transfer away from all secured agency work, repeated attempts to entrap Plaintiff in a security violation, and her forced resignation, created a hostile and abusive work environment.

88. Plaintiff was subjected to harassment because her race and protected reporting activities and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

89. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

90. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

91. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of Respondeat Superior.

92. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages –including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

93. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

94. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award monetary damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct, including for lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

b. Reinstate Ms. Washington's Air Force Special Access Program Access;

c. Remove all references of infractions, security violations, and related documentation from Ms. Washington's personnel file;

d. Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

e. Award reasonable attorney fees, costs, and expenses incurred for this action;

f. Order Defendant to institute a policy and procedure to be implemented against discrimination;

g. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

h. Require supervisory training for the supervisors at issue herein;

i. Order Defendant to stop collection efforts for the education repayment issued against Plaintiff as a result of her forced resignation;

j. Award equitable, declaratory, punitive, and injunctive relief; and

k. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully Submitted,

*Sean C Timmons*

_____
Sean C. Timmons
Managing Partner

Michael Fallings, Esq.
Managing Partner
Tully Rinckey, PLLC.
3724 Executive Center Drive, Suite 205
Austin, Texas 78731
stimmons@tullylegal.com
mfallings@fedattorney.com
(512) 225-2822